IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

BRION STERLING TABOLT, )
    PLAINTIFF, )
VS. ) CV 98-H-2373-NE
THE CITY OF HUNTSVILLE, ET AL., )
    DEFENDANTS. )

FILED
00 JAN 26 AM 10: 28
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JAN 2 6 2000

## MEMORANDUM OF DECISION

Pursuant to the Court's April 28, 1999 order, the claims remaining in this action are: (1) plaintiff's section 1983 claim against the City of Huntsville based on a search occurring on or about September 3, 1998 (Count II);[1] and (2) plaintiff's section 1983 claim against the City of Huntsville and Audey Majors based on plaintiff's arrest on September 20, 1996 (Count IV).[2] With

---

[1]Count II of plaintiff's Complaint provides as follows:

By searching, without a warrant, the curtilage of the residence located at 2027 Sewanee Road where plaintiff was then a resident, on or about September 3, 1998, Defendant and City of Huntsville and its unidentified employees John Doe #1 through John Doe #4 violated the Plaintiff's constitutional right to privacy guaranteed under the Fourth, Fifth, Ninth, and Due Process Clause of the Fourteenth Amendment to the United States Constitution.

[2]Count IV of plaintiff's Complaint provides:

Defendant City of Huntsville, by arresting Plaintiff without

44

regard to these claims, the Court has before it cross motions for summary judgment. Defendants the City of Huntsville and Audy Majors ("Majors") filed their motion on November 30, 1999, and plaintiff Brion Sterling Tabolt ("Tabolt") filed his motion on December 1, 1999. Both motions were deemed submitted, without oral argument, on December 30, 1999. In support of their respective motions for summary judgment, the parties have each submitted briefs[3] and evidence.[4]

---

probable cause and as the result of an unlawful, warrantless search, violated Plaintiff's liberty interests and right to privacy under the United States Constitution inasmuch as he was subjected to arrest and brief incarceration without the benefits of due process of law and as the result of a long history of animus toward him demonstrated by defendant Majors.

[3]Plaintiff filed a memorandum in support of his motion for summary judgment on December 1, 1999, and a brief in opposition to defendants' motion on December 30, 1999. On November 30, 1999, defendants filed a brief in support of their motion, and on December 16, 1999, a supplemental brief to the November 30, 1999 brief was filed. Finally, on December 30, 1999, defendants filed a brief in opposition to plaintiff's motion for summary judgment.

[4]Plaintiff has submitted numerous affidavits of plaintiff Tabolt; a videotape exhibit; excerpts from the depositions of Tabolt, Audy Majors, Robert A. Rushbrook, William Keith Atchley, Richard G. Galloway, Peter Joffrion, Margaret Mayo, Darcy Houle, George Timothy Ledbetter, James Thompson, and Jeff Parker; and affidavits of Bryan A. Jones and Eric Houle.
  Defendants have submitted affidavits of Audy Majors, Robert Rushbrook, Keith Atchley, and Sue Collie; excerpts from the depositions of Tabolt, Richard Gerald Galloway, Howard Jeffery Parker, William Keith Atchley, Audy Majors, Darcy Monroe Houle, and George Timothy Ledbetter; interrogatories of defendants to

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and

---

plaintiff and excerpts from plaintiff's response to interrogatories of defendants to plaintiff; a Certified Copy of City of Huntsville Municipal Court records for case number 96-11295; and various photographs attached as exhibits.

all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in

either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary

5

deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

The relevant factual background is as follows. On March 25, 1996, the City of Huntsville Department of Community Development ("DCD") issued a Notice to plaintiff concerning a violation of City of Huntsville Ordinance No. 90-202. (Atchley Aff. ¶ 4; Atchley Depo. pp. 78-79; Rushbrook Aff. ¶ 4). The ordinance provides in relevant part:

> It shall be unlawful and a violation of this ordinance for any person to store or keep upon the premises of any residential lot . . . any inoperable vehicle, scrap or junk, as defined herein, unless the same is housed in an approved, enclosed, covered structure so as not to be viewable from any public way or any other private property and in such a manner as to prevent health, fire, or safety hazard as defined by the laws of the state and the ordinances of the City of Huntsville, Alabama.

<u>See</u> City of Huntsville Ordinance No. 90-202. Plaintiff was cited under 90-202 with the unlawful storage of junk[5] at his place of

---

[5] The items included a Chevrolet which had flat tires and was not in operating condition; auto tires; auto batteries; auto body parts; auto parts; truck roll bars; auto rims; items covered with tarp; signs; bricks; plastic oil and gas containers; wheel barrows; and other debris located on the front porch and in the front, side and rear yards. The Chevrolet was located on plaintiff's driveway.

residence, located on 2027 Sewanee Road in Huntsville, Alabama. (See Tabolt Depo., pp. 45-47; 49-50). The Notice informed plaintiff that he had until April 25, 1996, to correct the violations. (Athcley Aff. ¶ 4).

After an April 25, 1996 inspection revealed that the violations had not been corrected, the matter was assigned to Audy Majors ("Majors"), a DCD compliance officer. (See Athcley Aff. ¶¶ 3, 4; Majors Aff. ¶ 5). Between May 1, 1999 and May 8, 1999, Majors inspected the property periodically and determined that not all of the violations had been corrected. (See Majors Aff. ¶ 4). Majors stated that he knocked on plaintiff's door each time he visited, but that no one answered. (Majors Aff. ¶ 4). Majors also stated that he left his business card at the residence, but that plaintiff never contacted him. (Majors Aff. ¶ 4).

On May 8, 1999, Majors completed a Notice and Complaint charging plaintiff with the unlawful storage of junk in violation of Ordinance No. 90-202. (See Majors Aff. ¶ 5; Collie Aff. ¶¶ 2, 3 and Exhibits attached thereto). Majors then swore to the information contained in the Notice and Complaint before City of Huntsville Magistrate, Sandra Kendrick. (Collie Aff. ¶ 3). That same day, Magistrate Kendrick issued to plaintiff a certified

7

mail Summons along with the Notice and Complaint.[6] (Collie Aff. ¶ 4). The Summons directed plaintiff to appear before the City of Huntsville Municipal Court on June 12, 1996. (Collie Aff. ¶ 4).

The certified mail Summons was returned unclaimed to the City of Huntsville Municipal Court, and plaintiff failed to appear in court on June 12, 1996, as directed in the Summons. (See Collie Aff. ¶¶ 6, 7 and Exhibits attached thereto). On June 12, 1996, Judge William Griffith, a City of Huntsville Municipal Court Judge, ordered that a warrant be issued for plaintiff's arrest.[7] (Collie Aff. ¶ 7). On June 14, 1996, Magistrate

---

[6]The procedure followed in issuing the Summons and Complaint was in compliance with section 11-45-9.1 of the Alabama Code, which provides:

> The governing body of any municipality may authorize any law enforcement officer of the state, in lieu of placing persons under custodial arrest, to issue a Summons and Complaint to any person charged with violating a municipal littering ordinance . . . .

See Ala. Code § 11-45-9.1 (1975).

[7]The procedure followed by Judge Griffith is authorized under Rule 3.1(c) of the Alabama Rules of Criminal Procedure, which provides as follows:

> **Subsequent issuance of writ of arrest**. If a defendant who has been duly summoned fails to appear, or if after issuance of a Summons there is reasonable cause to believe that the defendant will fail to appear, or if

8

Kendrick issued the warrant. (Collie Aff. ¶ 7 and Exhibits attached thereto). On September 20, 1996, plaintiff was arrested by a City of Huntsville police officer pursuant to the arrest warrant. (Collie Aff. ¶ 9). Plaintiff was subsequently released on bond. (Collie Aff. ¶ 9).

On the basis of his September 20, 1996 arrest, plaintiff asserts claims against both Majors and the City of Huntsville, alleging that his constitutional rights were violated under section 1983. (See Plaintiff's Complaint ¶¶ 2, 26 (Count IV)). Plaintiff maintains that his arrest was unlawful inasmuch as it was based on an unlawful search of his property. (See Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, p. 1). In plaintiff's words, he "never [would have been] arrested and tried but for the initial warrantless search of his curtilage resulting in the issuance of a citation." (Plaintiff's Brief in Support of Motion for Summary Judgment, p. 6).

For several reasons, plaintiff's argument is flawed. First,

---

for any reason the Summons cannot be served or delivered, a writ of arrest shall issue.

See Ala. R. Crim. Proc. 3.1(c).

when a local government is the subject of liability under section 1983, the plaintiff must show that "the constitutional deprivation resulted from a custom, policy, or practice of the municipality." Wideman v. Shallowford Comm. Hosp., Inc., 826 F.2d 1030, 1032 (11th Cir. 1987) (citing Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). Plaintiff in the instant case, however, has offered no evidence that the City of Huntsville had any custom, policy, or practice which caused the alleged constitutional violation. Plaintiff's arrest was not the product of an unconstitutional city policy, but instead was the result of a municipal court judge's determination that a warrant of arrest should issue pursuant to Ala. R. Crim Proc. 3.1(c).[8] Specifically, the determination was made on the basis of plaintiff's failure to respond to the Summons and Complaint and his failure to appear in Court. Because no policy, custom, or practice led to plaintiff's arrest, the City of Huntsville cannot be held liable under section 1983.

As against defendant Majors, plaintiff must establish a causal connection between the alleged act or omission of the defendant and the alleged constitutional deprivation. See

---

[8]See supra, note 7, for an explanation of Ala. R. Crim. Proc. 3.1(c).

10

Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) ("[section 1983] plainly requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation") (internal quotations omitted). Again, plaintiff has failed to make such a showing. Plaintiff contends that "Majors participated in plaintiff's arrest by swearing out the arrest warrant issued against plaintiff." (See Plaintiff's Amended Complaint ¶ 3). However, Majors did not issue the warrant for plaintiff's arrest; the warrant was issued by a Huntsville Municipal Court Judge. Majors' only involvement in plaintiff's arrest was to institute the non-custodial proceeding provided for under Ala. Code § 11-45-9.1 (1975), which allows city officers to issue a Summons and Complaint to anyone charged with violating a municipal littering ordinance. See Ala. Code § 11-45-9.1 (1975).⁹ In sum, Majors' involvement simply does not constitute the kind of participation in the constitutional violation necessary for section 1983 liability. As defendant correctly asserts, "[t]he fact that Majors was the complainant on the Notice and Complaint which resulted in the Summons requiring plaintiff to appear before the

---

⁹See supra, note 6, for full statutory provision.

11

court is simply not a sufficient nexus to the arrest to render Majors liable for any alleged constitutional deprivation resulting from the arrest." (See Brief in Support of Defendant's Motion for Summary Judgment, p. 18).

Assuming arguendo that plaintiff had established the requisite causal link to establish section 1983 liability, Majors is nonetheless entitled to qualified immunity. Dolihite v. Maughon, 74 F.3d 1027, 1040 (11th Cir. 1996) ("Qualified immunity protects government officials performing discretionary functions from civil liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."). To overcome a defense of qualified immunity in a section 1983 case, plaintiff must show that a prior case on "materially similar" facts has determined that the conduct at issue is unlawful. See Lassiter v. Alabama A&M Univ., 28 F.3d 1146, PP (11th Cir. 1994). Majors was clearly acting within his discretionary authority as a compliance officer for DCD by investigating possible violations in connection with plaintiff's property. The second requirement for immunity is also satisfied, for plaintiff has set forth no case law or statutory authority dictating, or even suggesting, that plaintiff's arrest was unlawful. As previously stated,

12

plaintiff's arrest was the product of plaintiff's own failure to appear in Court, as directed by a Summons and Complaint which was issued in compliance with Alabama law.

Because no causal link exists between any action taken on Majors' part and plaintiff's arrest, and because Majors nonetheless has a defense of qualified immunity, defendant Majors is entitled to summary judgment on plaintiff's unlawful arrest claim. Defendant the City of Huntsville is also entitled to summary judgment with regard to this claim, for plaintiff failed to establish that a city policy, custom, or practice caused his arrest.[10]

In addition to his unlawful arrest claim, plaintiff asserts another claim under section 1983 against the City of Huntsville for an alleged unconstitutional search occurring on or about

---

[10] Note that both Majors and the City of Huntsville would win alternatively on probable cause grounds because probable cause existed for Majors to issue the Notice and Complaint to plaintiff. See Williamson v. Mills, 65 F.3d 155, 158 (11th Cir. 1995) (only arguable probable cause must exist for a grant of immunity). Because there was probable cause for Majors to issue the Notice an Complaint, plaintiff's claim against the City is undermined because no constitutional tort occurred on which to premise liability. See Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996), cert. denied, 522 U.S. 966 (1997) ("an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred").

September 3, 1998.[11] (See Plaintiff's Complaint ¶ 24 (Count II)). With regard to the alleged incident, plaintiff claims that on September 3, 1998 he observed at least three persons on his property inside the fenced area of his back yard. (See Tabolt Depo., pp. 39-42, 122, 162-63. According to plaintiff, one of the persons had what appeared to be a city logo on his shirt, and one of the vehicles had a DCD logo. (Tabolt Depo., pp. 39, 40). Plaintiff claims that once the persons became aware of his presence, they immediately exited the rear gate, entered their vehicles, and drove away. (See Tabolt Depo., pp. 39, 41). Plaintiff stated that he did not engage in conversation with the persons on his property, and that he was not sure of their purpose in being on the property. (See Tabolt Depo., pp. 41, 42). Based on these facts, plaintiff argues that City of

---

[11] Plaintiff contends throughout his pleadings that his constitutional rights were violated by various other alleged searches. However, as defendant correctly points out, the only search at issue here is the one specified in Count II of plaintiff's Complaint, which occurred on or about September 3, 1998. The court clarified the issues remaining in the present action per its April 28, 1999 order. If plaintiff sought to pursue a second search not mentioned in the Court's April 28, 1999 order, he could have filed a motion to expand the nature of the claim or a similar motion to dispute the issues as outlined by the Court. Because plaintiff has not contested the issues as stated in the order, the Court will not address plaintiff's claims with regard to any searches other than that allegedly occurring on or about September 3, 1998.

Huntsville employees were conducting a search in violation of the Fourth Amendment.[12] (See <u>Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment</u>, pp. 13-14).

Plaintiff's claim concerning the alleged September 3, 1998 unconstitutional search is completely without merit. First, plaintiff has provided no evidence that a search was conducted within the meaning of the Fourth Amendment. When questioned about the activities of the persons allegedly on his property, plaintiff himself stated that he had "no idea what they were doing." (Tabolt Depo., p. 42). The only fact plaintiff could attest to was the presence of three persons, who appeared to be City of Huntsville employees, on his property. As defendant correctly notes, however, mere entry onto land, even if the entry constitutes a trespass, does not constitute a Fourth Amendment search. See <u>Haerr v. U.S.</u>, 240 F.2d 533, 535 (5th Cir. 1957) ("The term [search] implies exploratory investigation or quest . . . Mere observation, however, does not constitute a search.");

---

[12] Plaintiff has failed to fully develop his argument regarding the September 3, 1998 unlawful search claim. With the exception of stating the allegation in his Complaint and making a very terse, elusive argument in his Brief, in Opposition to Defendants' Motion for Summary Judgment, plaintiff nowhere else mentions the alleged September 3, 1998 incident. The Court will nonetheless address the claim because it is present in plaintiff's pleadings.

Ehlers v. Bogue, 626 F.2d 1314, 1315 (5th Cir. 1980), cert. denied, 451 U.S. 909 (1981) ("Even if defendants technically trespassed on plaintiff's property, a trespass does not of itself constitute an illegal search.").

Even assuming that a search was conducted, plaintiff has not demonstrated that he had a reasonable expectation of privacy in the area in question so as to render the search illegal. See U.S. v. Williams, 581 F.2d 451, 453 (5th Cir. 1978), cert. denied, 440 U.S. 972 (1979) (Fourth Amendment applicability depends on the existence of a reasonable expectation of privacy). The articles of "junk" at issue in the citation could be observed from the outside of the fenced area. More importantly, however, plaintiff admitted that other City of Huntsville employees had come within the fenced area on numerous occasions to monitor the utilities and water meter. (See Tabolt Depo., p. 220). Plaintiff could not have had a reasonable expectation of privacy in an area which was open to view by the general public and open for entrance by other City employees. See Ehlers, 626 F.2d at 1315 (holding that Fourth Amendment protections do not apply where area allegedly "searched" is easily accessible and visible to the general public).

Plaintiff has simply produced no evidence in support of his

unlawful search claim. He has not demonstrated that City employees were actually conducting a search of his property on September 3, 1998, or that he had a reasonable expectation of privacy in the area "searched" sufficient to give rise to Fourth Amendment protections. Because plaintiff has failed to produce evidence that an illegal search of his property occurred on September 3, 1998, defendant City of Huntsville is entitled to summary judgment as to plaintiff's unlawful search claim.[13]

In summary, the Court finds that no material issues of fact remain and that defendants, the City of Huntsville and Audy Majors, are entitled to judgment as a matter of law as to all claims asserted by plaintiff. A separate order will be entered.

DONE this 26th day of January, 2000.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[13] Even if a search had occurred on September 3, 1998 and a reasonable expectation of privacy had existed in the area in question, plaintiff has nonetheless failed to establish that any city policy, custom, or practice caused the alleged constitutional deprivation sufficient to impose section 1983 liability on the City of Huntsville. See Monell v. Department of Social Services, 436 U.S. 658 (1978).

17